Our next case is 18-1042 Mary Barbato v. Greystone Alliance. Mr. Rosencoff. May it please the court. My name is Matthew Rosencoff. I represent Appellant Crown Asset Management. Before I begin, may I reserve four minutes for rebuttal? Granted. Thank you, Your Honor. The central issue we are here to discuss today is whether a company that is a passive debt purchaser who outsources all collection activity can be adjudged to have its principal purpose, the collection of any debts, such that it is subject to the Fair Debt Collection Practices Act. And the answer is no. Before you do that, can I just interrupt for a minute? Because the way this case comes to us on certification, I want to see if you agree with me that the first issue are the terms debt collector and creditor mutually exclusive under the FDCPA. That's no longer on the table because of our decision in Tepper, correct? Correct, Your Honor. We are not arguing that point here today. And then secondly, does Henson require a finding the Crown is not a debt collector in this case where it was a third-party buyer of the debt and the debt was in default at the time it was purchased? Isn't it clear that the answer to that is no, because Henson did not address the statutory definition of debt collector that was applied? Respectfully, Your Honor, I disagree. I do think Henson impacts it for a number of reasons. But don't – all right, maybe it impacts it, but Henson evaluated the other provision. I used the wrong word, requires. Yes, Henson did speak to the regulated collects definition, but Henson did – All right, so then let me go back to the way the question is formulated. Does Henson require a finding? As applied to the facts of this case, yes, Your Honor. It does? Okay. And I can explain why. Okay. The Supreme Court made it clear with the way that it interpreted the words of the statute and how it interpreted the phrases used by Congress in 1692A6 that would require Crown to fall outside of the definition of debt collector. And I'll get to that in one moment. But the other reason why it requires it is what Henson also did, which this Court recognized in Tepper and has since recognized in another opinion issued the same day, is that the default status test no longer applies. What the lower court did in this case was it applied the default status test to determine as a matter of law that Crown was a debt collector. That is no longer the case. This Court has recognized that the fact that the account was purchased in default is irrelevant. So what this Court needs to do is go back to the words of the statute, which the district court did not do. And what's important is because post-Henson, applying the specific words that Congress wrote into 1692A6 actually requires reversal and entry of summary judgment in favor of Crown. All right. So you're focusing in on the words principal purpose. You understand principal purpose to mean do you personally or directly engage in the activity of collecting the debts. And your opponents understand this to be, well, is this your goal, whether it's done by you or by someone else. So let's focus in on the text. Why do you think purpose should not be understood to be goal? Certainly, Your Honor. There's actually two important parts to the principal purpose definition, and I'll refer to the words because the words here matter as written by Congress. The principal purpose of which is the collection of any debts. It's not just the phrase principal purpose. It's that that company's principal purpose is the collection of debts. The way the case law has defined principal purpose is what is that company's essence? What is their main purpose? It's not a purpose or some. Well, let's start with this. Tomorrow Congress outlaws collection of any debts. Your client goes out of business, correct? Your client doesn't do anything else if there is no debt collecting going on in the U.S. Well, they'd have no one to outsource it to, so yes, Your Honor. Okay, right. So if it's understood as goal, if the goal can be done indirectly, it's the collection of any debts, right? This is an argument about whether purpose means personal or directly, and you've got a textual point that there are other provisions that say the regular collects has directly or indirectly in it, and principal purpose doesn't, right? Correct, Your Honor. That favors you. But when I look up purpose in the dictionary, goal, task, aim, it doesn't speak in terms of activity or whether it's being done personally or directly. So why should we understand it that way? Sure. Your Honor, the first point is exactly as you noted. If we focus on what is the tangential benefit through indirectly of others, it is writing indirect into the principal purpose definition that does not exist there. It is adding words to a statute and renders the regularly collects phrase superfluous. But second, it is focusing on the collection of debts. Collection is not defined as an accumulation here. We're not talking about the acquisition here. Congress wasn't regulating acquisition. It was regulating the abusive tactics undertaken by the actual debt collectors. And we must not lose focus that in this case, the appellee dismissed the actual abuse, alleged abuser. Let's look back to the text. The purpose is the collection and the principal purpose prime. Collection is a noun. It seems to envision even the passive receipt by the use of that term as opposed to the active verb of collect, in regularly collects. And there, because it is using the active verb, Congress is specifying direct or indirect. But where you're talking about collection and using it in this context, that seems to already embody the concept of indirect or direct. It doesn't require the actor to be the one collecting for the first part of the definition. Your Honor, I respectfully disagree. Collection in this term is a verb, not a noun. I think the purpose behind it, 1692, as it is written by Congress, is to curb abusive debt collection tactics. The reason directly or indirectly exists in the regular. Why wouldn't outsourcing, I'm assuming for a minute that the dunning calls and letters were improper under the FDCPA. Just grant that for a minute. Why wouldn't the outsourcing of that illicit behavior be precisely the evil that Congress was aiming at? Because Congress was focused on the actor. Congress wasn't focused on the creditor. So Congress says, oh, this is fine. As long as you outsource your dirty work to somebody else, we're fine with that. Your Honor, the focus, as the Supreme Court ruled on Henson, Congress wasn't focused on the debt purchaser. Congress, as Justice Gorsuch wrote, Congress did not have the question before them of what to deal with the debt purchaser. They were only focused on the actual entities that were committing the abuse. That's because principal purpose wasn't at issue there. I mean, that was a subsection 2 case that's not at issue here. So when we're trying to get our arms around the principal purpose of which is the collection of any debts, how do we know that's a verb? I mean, some people collect baseball cards. Some people collect stamps. Your client collects debts. And I think purposive is worse for you because if I'm Congress, I want to impose liability to keep you from contracting with aggressive or unscrupulous debt collectors. You don't have a lot of friends in Congress here. So a big purposive approach would license us to clamp down on a very unpopular industry. I would not run away from the text if I were you. Your Honor, and I'm not running away from the text. I think, actually, principal purpose of collection is not a passive third party, is not inferring the benefit from a third party. Well, Congress, while I understand, and Grant, you're on to the point, while it may not be the most favorable position to be able to take in front of Congress about why these companies should not be regulated, that is not the focus here. There's a reason under the vicarious liability test that creditors aren't vicariously liable for the acts of the debt collectors. If that were true, every creditor would be vicariously liable. If they were concerned with- Vicarious liability, important point. Talk to us about our precedent police, right? We did recognize vicarious liability in some debt collection cases. Why do you think that vicarious liability is not appropriate to extend from police to this situation? The first step, Your Honor, is in vicarious liability. Under the case law, a creditor is not vicariously liable for the acts of the debt collector. Crown is a creditor. There is no dispute here under the auspices of Henson. They are the entity to whom the debt is owed. So we only reach the vicarious liability issue if Crown is ascertained to be a debt collector, which we maintain it's not. But for argument's sake, assuming that we get to that point- I grant your point. They're not vicariously liable. But if you're a debt collector and you're hiring another debt collector, then you're subject, and then we have a vicarious increase. So let's go down that road. But we now have a case of first impression because we have not had a single case where a company, because it's now in a post-Henson world, is both a creditor and debt collector. Why should the fact that they simply are the owner outweigh, for vicarious liability purposes, the fact that they are passed through the acts of third parties then to be deemed a debt collector? Why isn't that policy? That was NSF. And it was an acquirer that had outsourced the collection to another entity. And when we talked there about the principal purpose of NTF's business being the collection of debts, we explained that that was namely defaulted obligations which it purchases from municipalities. NTF exists solely for the purpose of holding claims for delinquent taxes and municipal obligations. That's what made it a debt collector under POLIS. Why isn't POLIS still good law? Because the fact that the POLIS case focused on the default status at the time, and as this court in Tepper also ruled by the court in POLIS looking to the fact that those were defaulted acquisitions, that that part is no longer good law. That was abrogated by Henson because the default status test no longer applies. Right. So it doesn't matter if the debt that they're acquiring is in default or comes into default during the time of their possession. But where their business model, where their purpose is to hold debt, to liquidate that debt, whether they have their own employees do it or they outsource it to another entity is irrelevant under POLIS. The court in POLIS did not address the first aspect, whether that entity was a creditor, because that has since been changed based on Henson. So this court didn't have the opportunity to consider how does it address the intersection between those two issues. There's nothing in the POLIS decision to indicate that the entity was a creditor. Under Henson, it would be. It's not here either. Because it can be both. We now know that from Tepper. So we're just looking at whether it meets the definition of debt collector, separate and apart from being a creditor. No one's disputing that it's also a creditor. Is it a debt collector? And there, why isn't it on all fours with NSF? Why isn't this case then on all fours with NSF? Why isn't your client's status and the nature of its business on all fours with NSF? Well, I recognize that the facts are similar. My response to that is, again, those issues have since been changed because this court at the time was in a pre-Henson world where courts focused on the default status. And what the Supreme Court in Henson admittedly, speaking to the regulated collects definition, has addressed is that Congress wasn't focused on those defaulted debt purchasers. Congress wasn't regulating those entities. By regulating a company that simply purchases an account in default and then outsources all activity to third parties, it would not further the goal of the FDCPA. Consumers would not be protected one bit. To your Honor's point about isn't this exactly what we want to do or why should we allow companies to then go ahead and hire the most unscrupulous entities? Well, those companies are being regulated. The FDCPA speaks to them. The FTC governs them. But in addition, states have passed laws on this addition as well because the FDCPA does not contain any preemption. And in fact, states such as California has passed a Debt Buyers Act. Florida has an act that covers creditors and debt collectors. But then on the other spectrum, you have courts in states like Massachusetts who have their state statute modeled exactly after the FDCPA and have confirmed that it does not include debt purchasers. But isn't the problem for your client, you keep saying someone is in the business of acquiring debt as if that's full stop. But the nature of the business is the liquidation of debt. Your client is not, for example, an entity that collects mortgages and then is repackaging them for a secondary market. It's not simply an acquirer of the debt and then doing something different with the debt. Its business is the liquidation of debt, which has a couple different components to it. But your client's business sees it from the beginning to its terminus, which is the liquidation. I respectfully disagree. Crown's business isn't the liquidation. The liquidation is done by the third parties. Crown may be benefiting from the— It collects the liquid. It benefits from the monetary resources. It needs the liquid. It's not a business if it doesn't get the liquid. Correct. But I'll use the same analogy. If there's an investor who invests in a bunch of real estate and then hires some contractors to improve the kitchen and materially improve that resource and then flip it, does that make my client— That's why we have corporations and limit liability and everything. But that doesn't really help us. This language is the principal purpose of which is the collection of any debts. We're not limited to the corporate form here. It's like saying that a landlord is not in the business of renting apartments because the property manager actually handles the renting of it. At some point, you've got to look through it and understand, is the landlord doing anything else? Is the landlord speculating on improving and flipping the buildings or packaging them together or doing something else? But if all a landlord is doing is collecting the rents and doing it via the building manager, it seems odd to say the landlord is not in the business of leasing properties. Your Honor, I see my time has expired. May I answer that question briefly? I think the best way we can respond to that is to look to what the Supreme Court has said in two separate cases, in the Hines case and the Germann case. In both cases, both FDCPA cases, the Hines case was regulating litigating activities of lawyers. The court confirmed that the focus is on the interactions between the debt collector and the consumer. A quote from the Jenkins case, the court stated, to collect a debt or claim is to obtain payment. Crown is not collecting payment here. And in the Germann case, what the court said is, again, the FDCPA regulates the interactions between consumers and debt collectors. There's no interaction between Crown and any of these consumers. Thank you. Thank you, Your Honor. We'll hear you on rebuttal, Mr. Rosenstein. Mr. Edelman? May it please the court, counsel, I'm Daniel A. Edelman, representing Mary Barbado. Let me first address the words indirect versus direct, which Crown focuses on.  It is in the for another part of the definition, because it picks up people that perform services that materially facilitate debt collection, always for another, but who do not receive the money. In this court's civil lit decision, the language indirect was specifically held to encompass a person that went to the debtor's home and insisted that they contact the collector, but did not themselves pick up the money. But I think your adversary's point is an expressio unius in Prince. Congress went out of its way to add direct or indirect to the regularly collects definition. It didn't add that to principal purpose. Should we infer that it expected principal purpose to be doing the collecting directly? No, because if you look at the substantive provisions of the FDCPA, a number of them apply to people that facilitate collection in the manner I indicated without actually doing it, such as 6092B, C, E10, E11, and E14. For example, in the Romine case discussed in civil leg, obtaining information about how to contact the debtor through pretext and deception. The Western Union was not engaged in the receipt of money, but it was nevertheless held to be engaged in debt collection activity for another by engaging in that. So it serves a substantive purpose and is not necessary in the principal purpose portion of the definition, because I think that focuses in on the source of revenue. It does so without the implicit argument made by Crown here, is that if the debt collection is actually done by independent contractors as opposed to employees, it is somehow not attributable to Crown. And that's just wrong. Essentially all liability under the FDCPA is vicarious. All debt collection is conducted by entities, both now and in 1977 when the Act was passed. The question is whether under the law of agency, the human beings that are actually engaging in the collection activity, whether their activity should be attributable to Crown. I'm not sure that's helpful. I mean, human beings that work for companies, I mean, then the company is liable. Here we're trying to get arms around which company is liable, and it strikes me as odd. Why is Turning Point off the hook here? They went out of business. So that doesn't mean they weren't liable. It just means they weren't collectible. That's correct. But we don't want to deform the statute for purposes of collectability, right? I mean, that's not your argument. Your argument is that, I guess, under the text of the statute, the principal purpose of this company is the collection of debt. That is correct because all of the human activity which is legally attributable to it under the law of agency is collection activity, filing of lawsuits, sending of dunning letters. Isn't that exactly the point, though? Because traditional common law agency principles involve indicia of control. Your employee having authority to say what the agent should do and how the agent should do it. And here you're arguing that the statute should be interpreted to impose vicarious liability without there being a traditional agency relationship. There clearly is a – okay, let us distinguish between two things. Agency and employee-employer. The persons that are conducting the activity in this case are not employees. They're independent contractor agents. That makes them not agents. They're contractors. No. They're one or the other. No, Your Honor. When the company that develops the land hires a company to pour the concrete, the concrete company is not an agent. It's not master servant. It's a subcontractor. It's a separate entity. But a company that is a collection agency is by definition an agent. It is engaged in representational conduct. It tells the debtor to pay in some manner and hopefully receives money from the debt collector. There is a 1994 case of this circuit which addresses what Judge Krauss just referenced. It's called AT&T v. Winback & Conserve. It's 42F 3rd 1421. And it draws the distinction between employees, agents who are independent contractors, and people such as the company who hired to pour concrete who may be referred to as contractors but are not agents. They do not represent the principal. They do not act in the name of the principal or on behalf of the principal. They don't do things for the principal like collect money and remit it to the principal, making the business activity of the principal the receipt of the money. And under agency law, that case actually involved the Lanham Act, but it talks about general federal common law, and there's no reason not to apply it under the FDCPA, acts of independent contractors such as Turning Point engaged in representational activity are attributable to the principal as long as the conduct is generally authorized and any deviations from acceptable conduct are foreseeable. Even if Crown doesn't tell Turning Point how to do its business, even if Crown has no involvement in the manner in which Turning Point attempts to collect the debt? Yes. Let's talk about politics for a minute. Because you want to apply the agency law full bore here, and vicarious liability full bore, but the difficulty is under traditional vicarious liability, sometimes principals are held liable even when they forbid an agent to do certain conduct. Do you want to import that full bore? Do you think that if they say do not use a false name, do not send harassing letters, do it in this manner, and the collection agency goes above and beyond and does it in a manner they were told not to do, you think that Crown asset management can still be held liable for that? The test would be whether the deviation is foreseeable. In the case of sending a bad collection letter, yes, it's foreseeable that debt collectors do it because there are thousands of cases involving exactly that. And it would be incumbent upon Crown in order to avoid liability to do things like review the letters and make sure that they are, in Crown's opinion, compliant. Then you're saying entities can't focus on or build their expertise around acquisition or the management of debt. They have to become the third party debt collectors themselves. No, Your Honor. I am saying that if they hire a third party debt collector and their sole source of income and 100% of the human actions which are engaged in on behalf of somebody like Crown involve debt collection, then they are a debt collector. Their business, investment in debt is not a business. It's like purchase of an inventory. Inventory of what? You have to sell it, you have to liquidate it, you have to do something with it in order to turn it into money, which is, I think, the test of a business. It's a business. I mean, the whole securitization market is built on that, so I'm not sure. They don't necessarily have to be involved in the collection of debts. They could accumulate portfolios of debt and then sell those portfolios of debt to other people that buy portfolios of debt. Let's ask that question. Would they be a debt collector then? If that's all they did, no. They would be either buyers and sellers of debt or brokers, but they would not drive income. All right. We agree on that then, but then it means it's no answer to say that collecting debt is not a business. I mean, it is. Collecting debt is a business, but purchasing debt without further explanation is not a business. It's an expense of some other business, either buying and selling, which is not involved here, or liquidation of the debt, which is 100% of what Crown does. I'd like to know from you, I'd like to know from your opposing counsel, whether there are analogous federal statutes. If you're aware of the precarious liability treatment under the Fair Credit Reporting Act or similar, is your position that this should just be reasonable foreseeability and so broad agency liability regardless? Are you aware of any authority on that? The AT&T case involved the Lanham Act. I believe that similar cases, a similar law has been applied under the Telephone Consumer Protection Act, and nothing else comes to mind, but I believe that the court in AT&T said that it was applying general common law, federal common law principles to determine when a principle is liable for an independent contractor agent's misrepresentations of origin, I believe, under the Lanham Act. Is there any indication here that these are anything other than independent, bona fide, separate companies? Given the fact that they went out of business and we have to dismiss them, that illustrates a problem. If the party with the funds and who receives the funds, Crown, gets to hire outside companies and thereby shed liability, it has a very strong incentive to hire the most aggressive and irresponsible companies out there. You can find a lot of them, for example, in Buffalo, New York. They conduct extremely aggressive collection activities, and then when the authorities go after them or private litigants go after them, close business and the principles open up another business in a different mall. And if that constituted insulation, it would furnish a very simple way of evading the FDCPA altogether. And I think that what needs to be done is first look at the source of revenue of the defendant, and if 100 percent of the source of revenue is the liquidation of consumer debts, then it is a principal purpose debt collector, or 50.1 percent is. You also look at what the activities are that are being attributed to it under agency principles. But you don't need to get there, though, do you? That's what perplexes me about your vicarious liability argument. I don't understand the statute to require a finding by this court of vicarious liability in order to make a ruling that Crown is a debt collector because its principal purpose is the collection of any debt. I would first ask the court to look at the source of revenue. If Crown's source of revenue is debt collection, and they basically admit that, but for the fact that we have third parties do this, we get our revenue from debt collection, that should be sufficient.  If third parties, which would be attributable to Crown under federal common law of agency, constitute debt collection, then it also is engaged in the principal purpose of debt collection. That would still leave outside the FDCPA entities such as banks. Santander, for example, if all human activity conducted on its behalf is attributed to it, is not engaged in debt collection. It's engaged in a banking or credit extension business. Same thing with many of the defendants that have been named, that are involved in the cases cited by Crown. The fact that some states have different regulatory schemes, I think, is not important. Why? Congress expressly states in 1692 that state laws are insufficient. We need additional liability. In addition, most of these state laws were passed after 1977. They don't necessarily inform the meaning of the congressional language adopted in that year. And in many cases, states, because they are regulating both creditors and debt collectors, do not need to make fine distinctions between the category applicable to a debt buyer. For example, in Massachusetts, the Supreme Court deferred to an agency interpretation, which said that debt buyers will be regulated as creditors and not as debt collectors, because both of those categories were regulated by the state. Therefore, it is of lesser importance than here, where if the FDCPA doesn't apply to Crown, nothing does, and the actual actors can simply close up shop and reopen. Does the definition of debt collector, of the principle purpose, that you're asking us to adopt mean, in essence, that any entity that's in the business of acquiring debt could never have an FDCPA claim dismissed at the motion-to-dismiss stage? There would have to be discovery as to the extent of their collection activities, the percentages of revenue from that as opposed to other activities, that part of their business now needs to take account of all of the costs that go along with litigation through summary judgment. No, Your Honor. If you consider Santander, another case involved, Chase Bank, I don't think that you get past the Iqbal Twombly test by alleging that the principle purpose of such an entity is debt collection. It almost obviously is not. It's banking. And unless you can allege some fairly specific facts showing that an entity with the name bank in it, in fact, has a bank charter for the sole purpose of engaging in debt collection, you don't get past the motion-to-dismiss in that. But what about banks that do, and a number do, set up a separate arm to deal with credit extensions, to deal with the handling of loans? Or even if we're talking about the repackaging of loans, where to improve the loan portfolio, to some extent they engage in litigation or outsourcing of collection. A company like Santander, which acquires a portfolio of which, say, 5% is in default, is not going to be a debt collector under the principle purpose test. Plaintiff would have to allege specific facts making it plausible that the principle purpose, 50-plus percent of the defendant's activity consists of debt collection as opposed to the extension of credit, the receipt of payments each month from people that do not require collection activity, the sale of debt, or other things which do not involve debt collection. So, no, I don't think we're subjecting Chase Bank to extensive litigation activity. I'm a little confused because it seems like you want to have this both ways. If the nature of, I thought your argument was that debt collection equates with debt liquidation. And if that's the case, why should it turn on whether most of those loans are not in default? That is, they're able to liquidate on them because the consumers are properly paying and they only have to engage in the outsourcing or litigation as to a small number. If that's what, if debt collection is liquidation, on the other hand, if it's that the debt collection for the principle purpose prong means that they are actively engaged in getting those funds paid one way or the other, then you really are conflating the first and second prongs and requiring them to be their principle purpose being acting as a third-party debt collector. No, Your Honor. By liquidation, I do not mean the receipt of payment of debts in the ordinary course by people who are paying on time. I don't think that's the statutory intendment. If you look at the other four, another prong of the definition, there's an express exception for debts which are acquired when they are current, when they're not in default. There's a servicing exception and also an exception for acquisition of debt when it is not in default. I would not consider the receipt of loan payments by Chase Mortgage Company to be debt collection. It is a banking business. You make the loan. You collect it in the ordinary course. If 5% of your loans go bad, that does not make you a debt collector under a reasonable reading of the statutory language. But depending on the contingency of that portfolio going sour so that they then needed to collect, you could have an entity by that theory that starts out not as a debt collector and then becomes a debt collector over the course of time as the loans become non-performing loans? I would say no. I would look at the business purpose at the time you originate or you first are involved with the loans. Furthermore, as a practical matter, by the time about 10% to 15% of your loans are bad, you're going to be taken over by the federal regulators. There are other entities just don't function when 90% of their debts are bad when their intent at the time they went into business was not the acquisition of defaulted debt, which is what Crown does. Thank you, Mr. Edelman. We'll hear Mr. Rosenkopf on the phone. Can I start by asking, if we do find that your client is a debt collector, then the case goes back, and I assume you defend the case by saying, look, our challenge practice does not involve an attempt to collect the debt as the Act defines it. In fact, we don't even have a challenge practice because we don't do anything except hire third parties. And prong four of the FDCPA, the defendant has violated a provision in attempting to collect the debt. You would say, well, here again, we've done nothing except hire a third party, and we don't manage them. We don't tell them how to do their jobs, and we are blissfully ignorant of how they do their work. That's why we pay them, right? That's why if you were to collect the debt yourself, you wouldn't give 10 or 20 percent to some third party. You'd keep all the money yourself, right? Your Honor, I think your question highlights the exact concern and problem with that we're faced with today, because what Apelli is arguing is not direct liability against Crown. It is purely based on vicarious liability. Well, forget about that for a minute. Let's assume that we agree with you that you're not vicariously liable. I'm trying to find out practically what we do with this case and what happens on remand if we find that your client's principal purpose is the collection of debts, which makes you a, quote, debt collector under the statute. Then what happens? Your Honor, if my client is adjudged to be a debt collector, as you just outlined, and vicarious liability did not apply, then my client would not be liable under the FDCPA because they didn't send a letter, they didn't make any calls, they had no interaction with Apelli. So why should we decide the vicarious liability issue now? The district court didn't, right? Your Honor, the court certified this for an important issue because of the waste of resources that was about to come down the pike, which is including class certification, class motions. Right, but we don't have an adequate record on vicarious liability, do we? To the extent that this court concludes that just for the fact that Crown is a debt collector they're not vicarious liable, I would think the record actually shows that Crown then would not be liable because all the record evidence is something else. Are you saying we can't conclude that for purposes of statutory interpretation you are a debt collector without addressing one way or the other the vicarious liability question? Because I, speaking only for myself, see them as different inquiries. One is a federal statutory interpretation inquiry and the other is a state common law inquiry. I think the problem illustrated by that exact hypothetical is that what the federal courts are doing is treating vicarious liability as a per se issue. If you are a debt collector, you are per se vicariously liable. That's your problem under Polis because we've already decided that. And Polis says point blank that once the entity meets the definition of debt collector it may be held vicariously liable for the collection activity of the third party. So you have to persuade us on the debt collector definition and vicarious liability is going to fall with that, correct? Your Honor, I think, yes, I recognize that that's exactly what Polis said. The concern, as I mentioned earlier, that Polis didn't take into account because it was prehensile and that Crown does satisfy the definition of creditor so it doesn't have the opportunity to explain why one matters more than the other. But more importantly, the reason behind vicarious liability in the FDCPA is to protect against debt collectors from farming out to others that which they themselves cannot do. Those aren't our facts here. That's a situation where a debt collector is starting to dumb, getting hands on, but then goes ahead and hires somebody else to do some of the other dirty work and offload it. That's not what Crown is doing. Crown is a complete independent company, to your point earlier. You're disputing factually that the client doesn't do it, but I think your adversary would say that your construction would open the door to unscrupulous companies that buy the debts and then hire shady, fly-by-night characters who then fold and are judgment-proof. So if we went down the road of saying there couldn't be vicarious liability, we would be encouraging. Now, maybe that's not in the statute. Maybe that's not for us to resolve now, and maybe there's not a record. But it makes us at least hesitate before saying there can't be vicarious liability. To your point, Your Honor, that's the exact argument that was raised in the Henson case, and the court said that's not an issue for the courts. I understand my time's up. Can I address one last point that Your Honor asked about a non-guest statute? As my appellee's counsel mentioned, the TCPA does not have written into it vicarious liability, but what the courts have applied, as my understanding, it is not a strict liability situation. And the TCPA has the same opportunity for abuse that the FDCPA has, because in that situation, and there's a lot of crossover with automated telephone dialing systems, with collectors that are donning, using ATDSs, faxes, text messaging, and that doesn't automatically make the company that hired them per se liable. And so, Your Honor, if you would like, I'd be happy to brief it separately. That's not one of the issues we addressed here today. I'd be happy to address in the context of a TCPA or other analogous statutes to the extent the court is interested. Thank you, Your Honor. Thank you. Thank you, counsel, for the excellent argument. The matter will be taken under advisement.